## McCALL vs. Doe ex Dem. PRYOR.

1. A prior possession of land, accompanied with acts of ownership, by one from whom the plaintiff deduces title, will authorise a recovery against a defendant, who is afterwards found in possession without any claim or title to the premises.
2. Where one is shown to have been in the prior possession of land, exercising acts of ownership, and others are afterwards found in possession of the same premises, the presumption, in the absence of evidence of an adverse claim, is that the possession of the latter is in subordination to that of the prior occupant.
3. Where on the trial of an ejectment, it is shown that one, upon whose mere presumptive title the plaintiff relies, left the possession of the land, the question whether or not he left it *animo revertendi* is for the consideration of the jury, but the court may decide, whether or not, from the facts of the case, such a question arises.
4. Where the question of the *animus revertendi*, arising upon the relinquishment of the possession of land by the presumptive owner, appears not to have been made, but waived in the primary court, it will not be pronounced on in this court.

Error to the Circuit Court of Lowndes. Tried before the Hon. Geo. W. Stone.

This was an action of ejectment instituted by the defendant against the plaintiff in error to recover the possession of a parcel of land in the county of Lowndes. The facts are sufficiently stated in the opinion of the court.

Boling, for the plaintiff in error:

1. Plaintiff in an action of ejectment must recover on the strength of his own title, and if this is not sufficient to enable him to maintain the action, it is unimportant what the title of the defendant is.—Brock et al. v. Younge et al. 4 Ala. 584.

2. Henry Hall's possessory interest was gone when he left the land, and he was out of possession, and the land was occupied by others when he made his deed to Amy Hall. Amy Hall had no title, consequently defendant in error has none.— See authorities collected in the opinion of this court when this case was tried before; see, also, 2 Kent's Com. 318-25; Grotius Jure, B. & P. b. 2, c. 3, s. 4; Mare Liberum, 1. 5; Myers

et al. v. McMillan's Heirs, 6 Dana, 686; see, also, Sowder v. McMillan's Heirs, 4 Dana, 658. ·

3. As to whether Henry Hall left with an intention of returning, should have been left to the jury, but the court took upon itself to decide this, which was a fact. If Hall did not intend to return, it is clear defendant in error has no title.

PRYOR, for the defendant:

The possession of Henry M. Hall, from 1834 to 1837, and the erection of valuable improvements, are *prima facie* evidence of title in him. *Prima facie* evidence of a fact is conclusive in the absence of rebutting evidence. From these then the law presumes Henry M. Hall had title to the premises during the time he was in possession. This presumption of law did not cease when he went out of possession, and other parties were found in possession. To destroy this presumption it was necessary to prove title out of him, or to prove facts which would authorise the presumption that he had no title; in other words, facts which were sufficient to destroy the presumption of title in him. No facts would be sufficient to destroy this presumption unless they were inconsistent with the presumption. Now title was presumed to be in Henry M. Hall. It could not pass out of him except by an actual conveyance, by descent, or by presumption of law. There was no evidence of a conveyance nor of a descent. Title remained in him then after he went out of possession, unless facts were proved that would authorise the presumption that the title had passed out of him. After the title was presumed to be in him, the only facts upon which any presumption could be founded were that he was out of possession and others in possession from 1837 to 1842, when he executed the deed to Amy G. Hall. It does not appear by evidence in what character these parties held possession. The law then in the absence of all evidence of the character of their possession fixes by presumption the character; for in the absence of evidence to explain the possession, the law always presumes the character of the possession. The law from the possession of Hall presumes he had title. The law will not make any presumption inconsistent with the presumption of title in him, unless facts be proved which are inconsistent with this presumption of title. No facts were proved that are inconsistent with

such presumption. The fact that other parties were in possession after he went out of possession, is perfectly consistent with the presumption of title in him, and cannot therefore authorise any presumption inconsistent with that presumption. Title may well be in one and possession in another. These two facts are perfectly compatible with each other. It is quite immaterial how a party acquires title, whether by presumption of law or otherwise; when it is once in him, it remains fixed there until facts are proved which are inconsistent with the existence of title in him; for certainly no fact consistent with such title can tend to destroy the title, and every fact relating to the title or the possession is either consistent or inconsistent with such title. In the total absence of all evidence to explain the character of the possession held by the parties who were in possession after Hall went out in 1837, the law presumes they held under him, for it must draw some presumption consistent with the presumption of title in him, as no fact inconsistent with such presumption was proved; and that they held under him is the only presumption the law could draw consistent with the presumption of title in him. From the change of possession the law can make no presumption inconsistent with the title in Hall, for such change was consistent with his title. A change of possession differs from an abandonment. Merely going out of possession will not destroy the presumption of title founded upon possession, for there is nothing inconsistent between such presumption and the going out of possession. Title in Hall and the subsequent possession of others, are perfectly consistent.

  If Hall had *abandoned* the premises, then his title being founded on possession and claim of title, would have ceased with the possession and claim of title, because his title would have rested on his possession and on his *intent*. By the *abandonment* which necessarily implies a change of intent, his title would have ceased. To destroy the presumption of title founded on possession upon the ground of *abandonment*, it must be proved *affirmatively* by the party who insists on the abandonment, that there has been an abandonment of the possession, or that the party after a change of possession has abandoned his claim to the land. It devolves upon the party who insists upon the abandonment to prove one of these facts *affirmatively*. To prove either of them, facts must be adduced sufficient to es-

tablish the abandonment, and such facts *must be inconsistent with the presumption of title in Hall.* The change of possession, or the mere fact of being out of possession whether there be a change or not, is not sufficient to destroy the presumption of title, because the change, or the fact, is consistent with the title. Something else therefore must be proved. In this case nothing was proved but the change of possession. There is no evidence to prove the character of the change. In the absence of such evidence the law presumes the character of the change. As the change is perfectly consistent with the presumption of title in Hall, the law cannot and will not make any presumption as to the character of the change, inconsistent with this presumption. The only presumption the law can make from the change of possession, consistent with the presumption of title in Hall, is that the parties who were in possession after he went out held under him. This is the only presumption that could be drawn, consistent with his title.

The possession of the parties who were in after Hall went out, was either consistent or inconsistent with the title of Hall. If consistent, then the title of Hall remained unaffected by the change, and he could have maintained ejectment against the parties in possession. If he could have maintained ejectment, he could convey to Amy G. Hall. His deed to her therefore conveyed a good title, if the possession of the parties who held possession at the time the deed to her was executed, was consistent with the presumption of title in Henry M. Hall. The possession of these parties could not be inconsistent unless they held the lands adversely. They could not hold adversely unless they held under a claim of title in themselves, or under other parties who claimed title. There is *no evidence* of a claim of title by the parties in possession at the time the deed was executed, nor of their possession under parties who did claim title. Then there was no adverse possession. Unless there were adverse possession, the possession was necessarily consistent with the presumption of title in Henry M. Hall; and if title were in him, and the lands were not held adversely, he could convey to Amy G. Hall.

PARSONS, J.—Possession of land is *prima facie* evidence of right. A prior possession under a claim of right short of the

period which creates a bar under the statute of limitations, will prevail over a subsequent possession, when no other evidence of title appears on either side.—Smith v. Lorillard, 10 Johns. 339.

It appears that Henry M. Hall went into possession of the land for which this action was brought in the year 1833, and made valuable improvements and built a fine house thereon. It also appears that the defendant below, who is the plaintiff in error, was subsequently in possession, but without having or claiming any right, so far as appears. According to the case cited, and many others that might be cited, H. M. Hall upon these facts could have recovered the lands from the defendant below by the action of ejectment. But it further appears that H. M. Hall conveyed the lands to Amy Hall in 1842, and that afterwards they were sold under a judgment and execution against her and purchased by and conveyed, as we understand the bill of exceptions, to Mr. Pryor, the lessor of the plaintiff below. Upon all the facts as yet stated the plaintiff below could maintain ejectment against the defendant below, upon authority of Badger v. Lyon, 7 Ala. Rep.

It appears, however, that H. M. Hall went out of possession in 1837 and that the lands were occupied by others whose names, with the exception of that of the plaintiff in error, are not mentioned, to the time of the trial. It does not appear that they claimed any right, or whether they held under or against H. M. Hall, or those who acquired his right as already mentioned. It cannot be presumed that those persons entered or held adversely to H. M. Hall or those who acquired his right, but we think the cases of Badger v. Lyon and other cases tend strongly to show that they must be intended to have entered and held under H. M. Hall and those who successively acquired his title, they being the presumed rightful owners.—See Jackson ex dem. Gansevoort and others v. Parker, 3 Johns. Cases, 124; Humbert v. Trinity Ch. 24 Wend. 587; Jackson v. Sharp, 9 Johns. R. 163; Jackson v. Harder, 4 ib. 203; 4 Halstead R. 149.

The counsel of the plaintiff in error now insists that H. M. Hall left the lands in 1837, without the *animus revertendi*, and so lost his right, and consequently that his deed to Amy Hall conveyed no title; or at least that the question of the *animus revertendi* should have been left to the jury.

35

It appears by the bill of exceptions that the defendant below on the trial asked the court to charge the jury, that the plaintiff had not made out such a case as would entitle him to recover, which the court refused, but instructed the jury that the plaintiff had proved such a title as would authorise him to recover against the defendant,—to which the defendant excepted.

It is contended for the defendant in error, among many other things, that if there was any question of the *animus revertendi* in the case, it was one which the court might decide, and for this the cases of Badger v. Lyon, 7 Ala. and Smith v. Lorillard, 10 Johns. R. 339, are relied on. We do not concur with the counsel on either side; not with the counsel for the plaintiff in error, because upon the whole evidence we hardly think the question arose, but if there was any evidence in the whole case that H. M. Hall left without the *animus revertendi*, it is our inference from the bill of exceptions, that this question was not made on the trial. We can hardly think the question arose upon the evidence of the case, because we think that he and those who are presumed to have held under him had possession the whole time. The bill of exceptions states that it was proved by the plaintiff below that H. M. Hall went out of possession in 1837; but we understand this to mean that he left the place, and nothing more. We do not suppose that it was intended to negative the fact of legal or constructive possession. The ordinary meaning of the language does not go so far. Had it been proved that those nameless persons who succeeded H. M. Hall in the actual possession, entered or held adversely, then the inference might have been different. The circumstances of this case are strongly opposed to the idea that H. M. Hall intended to abandon these lands, because while he lived on or occupied them, he made valuable improvements and built a fine house; thus perhaps doubling their value. There is no proof of any other title, which might have induced him to leave.— Judging from the amount of damages recovered in this action, it is to be presumed that the lands were of considerable annual value, and lastly, H. M. Hall conveyed the same lands to Amy Hall in 1842, no one then or at any previous time appearing to hold against him; and this conveyance in 1842 is before the defendant went into possession, as we are bound to presume

from the bill of exceptions, which says nothing as to the time when he entered. If going out of possession under these circumstances, is a fact which ought to have been left to the jury, in reference to the question of H. M. Hall's intention to abandon the premises, we have no hesitation in saying that it could not, under the circumstances, have created a presumption of such an intention. The plaintiff in error at most therefore only lost the benefit of evidence tending to such a presumption, but which was not sufficient to sustain it. The cases of Badger v. Lyon, and Smith v. Lorillard, *supra*, do not show that the court may decide the question of the *animus revertendi*, but it may be collected from them and other cases that the court may decide whether or not the question arises in a cause. There may be no evidence relative to the question, and then certainly the court may say so. It is not necessary in this case to decide whether there was any evidence tending in some very small degree to prove the want of the *animus revertendi*. If any, there was not enough to create a presumption of the fact, and therefore it was very proper in the defendant below not to make that defence. It does not appear by the bill of exceptions that he did defend on that ground, but from what is stated we infer that he did not. No charge was asked or excepted to which seems to have had the smallest reference to it: But on the contrary it is stated in the bill of exceptions that " there was no evidence that Henry Hall had ever had any paper title, and the only question in the case was whether the possession of four years and valuable improvements, &c. made by Henry Hall, created such a presumption of title in him as to vest a presumptive title in Amy Hall, by virtue of his deed." The inference from this and from the circumstances of the case is very strong that the question of the *animus revertendi* was not insisted on or made in the Circuit Court, but waived there. In Inge v. Murphy, 10 Ala. 886, it was held that when the question arising out of the possession of property for three years, under an unrecorded deed, is not raised before the jury, it will not be pronounced on in this court: And in Griffin v. *Doe ex dem.* Stoddard & Murphy, 12 Ala. 783, it was held that an objection that a deed was not proved and recorded, within the time prescribed by law, cannot be made in the appellate court, if not raised in the primary court. And because we infer from the circumstances of

the case and from the bill of exceptions that the question was not made below, we affirm the judgment.

DARGAN, C. J., not sitting in this case.