## COOKE v. POOL.

1. Finding of fact by the Circuit Judge from testimony reported by the master, approved.
2. An innocent assignee of a judgment is not affected by a champertous purchase of the judgment by his immediate assignor, but is entitled to enforce his judgment against the judgment debtor.

MR. JUSTICE McIVER *dissenting.*

Before WALLACE, J., Greenville, November, 1885.

The opinion sufficiently states the case. The Circuit decree was as follows:

After an attentive consideration of the testimony reported in this case, and the argument of counsel, I am satisfied with the master's report. It is alleged that the plaintiff cannot bring this action, because he is not the legal holder and owner of the Crotwell judgment against Seth Pool, and no other creditor of Seth Pool has joined in the action. The grounds of this allegation are, that Thompson H. Cooke, plaintiff's attorney, bought the Crotwell judgment for the purpose of bringing this action; that he is an attorney at law of this court; and that such a transaction between a creditor (and) an attorney of this court is void under section 2165 of the Revised Statutes of 1882. That section provides, in substance, that any attorney of this court who shall buy any demand for the purpose of putting it in suit, when the owner would not sue the same, shall pay a fine of one hundred dollars, and be incapable of practising in any court until restored by the Supreme Court.

It is insisted that as the statute provides a punishment for such conduct, the transaction is void; that the assignment transfers no right of action, even in the hands of innocent holders. I think the Crotwell judgment was purchased by Thompson H. Cooke for the purpose of bringing an action to set aside the deed attacked in this action, and that such an action would not have been brought by Crotwell, and if Thompson H. Cooke had brought the action, it would have been dismissed under section 2165 *supra.* But the action was not brought by Thompson H. Cooke, but by Henry P. Cooke, the assignee of Thompson H. Cooke, and there

38

is no evidence to show that he was aware or had notice of any unlawful purpose upon the part of his assignor. Whatever may be the actual truth of the facts, Henry P. Cooke stands before the court as the *bona fide* holder of this Crotwell judgment, and is not to be turned out of court for a transaction for which he is not responsible under the statute.

It is ordered and adjudged, that the report of the master herein be confirmed and made the judgment of this court.

*Mr. Geo. Westmoreland*, for appellant.

*Mr. T. H. Cooke*, contra.

November 22, 1886. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. One J. M. Crotwell held a judgment on Seth P. Pool for the sum of $164.50, which he assigned to Thompson H. Cooke, attorney at law. Cooke assigned the same to his brother, Henry P. Cooke, the plaintiff in this action. Henry P. Cooke instituted the action below to set aside a certain deed of the said S. P. Pool to certain of the defendants as fraudulent and void, it having been executed, as alleged, to defraud creditors. The defence set up in the answer of defendants denied the fraud in the deed, also the assignment of the judgment from Crotwell to T. H. Cooke, and claimed that the deed from Seth P. Pool to S. H. Pool was *bona fide* and for a valuable consideration.

The case having been referred to the master, he reported the following facts: That on April 6, 1878, J. M. Crotwell obtained a judgment by default against Seth P. Pool for $164.50, with $23.05 costs. This judgment was assigned by said Crotwell to T. H. Cooke, attorney, on July 3, 1882, and by said Cooke to H. Powell Cooke, the plaintiff in this action, on August 8, 1882. As to the illegality of the transaction between Crotwell and Cooke he reported: "That Crotwell mentioned having a judgment on Pool, but did not tell him that he wanted him to try and make the money. After this Cooke went to see Crotwell, and asked him to assign said judgment to him, which was done, with the

understanding on the part of Crotwell that he would have nothing more to do with it, and that he was not responsible for costs. * * * At the time of the assignment nothing was said about what Cooke was to pay for the judgment, but some time afterwards, a month or two, Cooke agreed to pay $100 for the judgment, and gave his note for that amount, with the understanding that he was not to pay until the case was settled. Cooke admits that he bought the judgment expecting to make something out of it, and he expected to make it by bringing a suit like this, if he did not make it otherwise. He assigned the judgment to his brother, the plaintiff, on account of a debt he owed him. Crotwell told Cooke before and after he assigned the judgment to him that he did not intend to have any more litigation about it." After the master's report was filed, T. H. Cooke's note to Crotwell was found, which by consent was admitted in evidence. It was dated July 3, 1882, the day of the assignment of the judgment to him.

His honor, Judge Wallace, who heard the report of the master upon exceptions, confirmed said report, and made it the judgment of the court, holding that notwithstanding T. H. Cooke could not have brought the action himself, in view of the fact that the evidence showed that he purchased the judgment for the purpose of bringing an action to set aside the deed attacked, which Crotwell, the assignor, would not have done, and which, under section 2165, General Statutes, an attorney at law could not do ; that section providing in substance, that an attorney of the court who shall buy any demand for the purpose of putting it in suit when the owner would not sue the same, shall pay a fine of one hundred dollars, and be incapable of practising in any court until restored by the Supreme Court—yet, that the plaintiff, "standing before the court as a *bona fide* holder of the judgment, could not be turned out of the court for a transaction for which he was not responsible under the statute." He therefore, as stated above, confirmed the report and made it the judgment of the court.

The defendants' exceptions on appeal raise three questions, 1st. That the assignment from Crotwell to Cooke was void. 2d. Being void, T. H. Cooke had no right to assign to his brother, the plaintiff. And, 3d. That his honor erred in holding that the

plaintiff, H. P. Cooke, was a *bona fide* holder of the judgment without notice of the unlawful purposes and acts of his assignor.

As to this last point. This was a question of fact, depending upon the force and effect of the testimony. Upon examination of the evidence directed to this point we find no ground, under the law applicable to such questions, to disturb the finding of the judge. This exception is therefore overruled.

The plaintiff, then, being as a matter of fact a *bona fide* holder of the judgment without notice, if his honor was right in ruling that, notwithstanding the transaction between T. H. Cooke and Crotwell may have been illegal, yet that this fact would not turn the plaintiff out of court, standing as such *bona fide* holder, then the appeal must be dismissed. The important, and in fact the only legal, question therefore involved in the appeal is, was his honor right in such ruling? If he was, it could make no difference, so far as the rights of the plaintiff are concerned, whether or not the assignment of the judgment in question from Crotwell to T. H. Cooke was champertous at common law, or was in violation of section 2165 of the General Statutes, he being a *bona fide* holder without notice.

Having reached the conclusion that his honor was correct in his ruling, we have deemed it unnecessary to follow the argument of the appellants as to the effect of section 2165, General Statutes, *supra*, or of the common law, upon a transaction like that between Crotwell and T. H. Cooke, by which it is alleged that the judgment in question was assigned by Crotwell to the said Cooke, and we have therefore confined ourselves in this opinion to the support of his honor's ruling as to the rights of the plaintiff. It is admitted that the assigned judgment is a valid judgment, unpaid and indefensible. There is no inherent defect therein, like a gaming note, void wherever met (*Mordecai* v. *Dawkins*, 9 *Rich.*, 262), or like an usurious contract, still usurious in whatever hands found (*Martin* v. *Petit*, 11 *Rich. Eq.*, 416), and there is really no defence to the judgment.

But it is claimed that the plaintiff is not a legal holder thereof, because his assignor, T. H. Cooke, received no title from Crotwell, the transaction between them as to the said Cooke being, as alleged, in violation of section 2165, General Statutes,

and champertous at common law, and this is the only defence. If the contest below was between T. H. Cooke and Crotwell as to the ownership of the judgment, or as to the enforcement of the agreement to assign, then the questions raised would be pertinent. But the judgment, it is admitted, was transferred from Crotwell to T. H. Cooke, and from the latter to the plaintiff, and Crotwell and Cooke are quiescent. Crotwell no longer claims the judgment, nor does T. H. Cooke. The plaintiff, however, claims it, and is in possession without protest or objection on the part of any one, and as a *bona fide* holder under what purports to be a regular and valid assignment, down from the original owner, and without notice of any taint in his title.

Now, can the judgment debtor, having no defence thereto, nor questioning in any way the validity thereof, or his heirs or representatives, under the facts of this case, resist the enforcement of said judgment, on the ground that the plaintiff has no title? If Crotwell was suing the plaintiff for this judgment, would not the title be adjudged against him on the doctrine of estoppel? However illegal it may have been for him to transfer said judgment to T. H. Cooke, yet, having done so, and having remained quiet until Cooke had transferred it to an innocent and *bona fide* holder, would the court allow him even to offer testimony impeaching his transfer? Would not the doctrine of estoppel close the door upon any investigation preceding the act of transfer to the plaintiff, and make the plaintiff's title complete? We think so. And if the plaintiff would thus be protected against Crotwell or T. H. Cooke, equally so must he be protected as against these defendants. They have no defence to the judgment, and it can make no difference to them by whom it may be enforced, so that when enforced, it shall be done by one whose act will end and extinguish it. The Circuit Judge was right in holding that the plaintiff could not be turned out of court on the defences set up.

As this determines the case, we express no opinion as to the questions whether the purchase by T. H. Cooke of this judgment was in violation of section 2165, General Statutes; nor, if so, whether that fact would render said purchase absolutely void; nor whether said purchase was champertous at common law.

598                    COOKE *v.* POOL.

These questions are not really involved in the appeal, and it would not be proper for this court to prejudge them, when the parties most interested therein are not before the court.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCGOWAN. I concur. I do not understand that the Circuit Judge refused to dismiss the plaintiff's action for the reason that he was a purchaser for value, in the sense of the equitable plea upon that subject, to sustain which it is necessary to show that the consideration was actually paid in money. Such plea is interposed by way of defence, as a shield against all claims except the legal title. As I understand, his view is that the plaintiff, having purchased the judgment *bona fide*, under an unbroken chain of assignments, regular upon their face, has the right to enforce it against the defendant in execution, notwithstanding the peculiar hidden vice alleged to exist in one of the intermediate assignments, with which the defendant in execution had no connection, and of which the plaintiff, when he took his assignment, had no notice. Section 2165, of the General Statutes, does not expressly declare void the "speculative practices" therein referred to, but imposes penalties upon an attorney who shall enter into them.

But assuming that the court would not enforce such a contract between the parties *in pari delicto*, it seems to me that until the hidden vice which affects the contract is made to appear, it may carry title to an innocent purchaser ; or, at least, that such alleged vice may not be shown collaterally by one in no way privy to it, so as either to inflict the penalties imposed, or avoid the contract as against a third person, who in the meantime has purchased *bona fide* and without notice of any defect. As was said in the case of *Verdier* v. *Simons*, 2 *McCord Ch.*, 388 : "As to champerty, contracts of this kind, if fairly made, have not been considered in modern times to be champerty. At any rate, it is for the party aggrieved and not for strangers to take advantage of these objections." The question in *McConnell* v. *Kitchens* was between the parties to the contract assailed. See *Torrence* v. *Shedd*, 112 *Ill.*, 477, where it is said in a case somewhat similar

to this: "But even conceding the agreement to be champertous, we do not think appellees can avail themselves of it as a defence to this suit.   While the cases are not all in accord on this question, we think the decided weight of authority sustains the position that champerty cannot be made available as a defence in a collateral proceeding, as is sought to be done here.  *Fetrow* v. *Merriwether*, 53 *Ill.*, 275; *Boone* v. *Chiles*, 10 *Pet.*, 219; *Hilton* v. *Woods*, *L. R.* 4 *Eq.*, 432; *Knight* v. *Bawyer*, 2 *DeG. & J.*, 444; *Coleman* v. *Billings*, 89 *Ill.*, 187.  This question cannot properly arise except in a controversy between the parties to the alleged champertous agreement or their privies," &c.

MR. JUSTICE MCIVER, *dissenting.*  I dissent.  One of the issues in the action was whether plaintiff was the owner of the judgment originally recovered by John M. Crotwell against Seth P. Pool.  To maintain his allegation of ownership the plaintiff must trace his title through the assignment from Crotwell to T. H. Cooke.  It therefore becomes a material inquiry whether such assignment was a valid or void transfer.  It seems to me that it is illegal and void under section 2165, of the General Statutes (*McConnell* v. *Kitchens*, 20 *S. C.*, 430), and that T. H. Cooke could not by an act expressly forbidden by statute acquire a legal title to the judgment, and could not, therefore, transfer any such title to the plaintiff, who consequently stands before the court claiming under a judgment in favor of a third person, to which he has shown no title whatever.  He cannot claim as the innocent holder of a negotiable security, for the judgment is not such a security; nor can he invoke the protection afforded to a *bona fide* purchaser for valuable consideration without notice, for he has neither acquired the legal title (*Bush* v. *Bush*, 3 *Strob. Eq.*, 131), nor has he paid any purchase money, the sole consideration of his purchase being an antecedent indebtedness, which is not sufficient.   *Williams* v. *Hollingsworth*, 1 *Strob. Eq.*, 103; *Zorn* v. *Railroad Company*, 5 *S. C.*, 90; *Haynsworth* v. *Bischoff*, 6 *S. C.*, 159.

I think, therefore, that the judgment appealed from should be reversed.

Judgment affirmed.